## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| George Logue | CIVIL ACTION<br>Case No:1:04-10272-GAO |
| Plaintiff | |
| v. | |
| Taunton State Hospital, et al. | |
| Defendant | |

## PLAINTIFF'S MEMORANDUM OF LAW
## SUPPORTING HIS OPPOSITION TO DISMISS

Plaintiff, George Logue, hereby introduces this Memorandum of Law to support his

Opposition to Defendant's Taunton State Hospital, under the Commonwealth's Executive

Office of Health and Human Services (collectively, the "defendants") Motion To

Dismiss. The opposition is set forth to dispel the reasoning by the state for it's dismissal.

Plaintiff respectfully suggests that consideration of any Motion to dismiss prior to

discovery pursuant to Rule 26 would be premature. If it may please this court, progress

in the related cases, including the submittal of minimal material evidence obtained

without discovery, further support these claims and the related cases pursuant to 42

U.S.C. § 1983 and 1985. Subject to modifications of statutory compliance; plaintiff

would request the complaints be allowed to proceed if, only injunctive relief were sought

against the institutional actors, while pursuing the employees in their individual capacity.

This memo now turns to supporting this request and plaintiff's opposition to the states

motion for dismissal.

## Deference Afforded Plaintiff under Rule 12(b)

It is well established that in a Rule 12(b)6 motion to dismiss, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial," F. Rules Civ. P., Rule 56 (e), with an understanding the court must examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant. Wagenmann v. Adams, 829 F.2d 196; (1987) (citing Fishman v. Clancy, 763 F.2d 485, 486 (1st Cir. 1985); Cazzola v. Codman & Shurtleff, Inc., 751 F.2d 53, 54 (1st Cir. 1984). Plaintiff is well aware that the Rule 12(b)6 standard "is not entirely a toothless tiger." Dartmouth Review v. Dartmouth College, 889 F. 2d 13, 16 (1st Cir. 1989). Therefore, he has composed a complaint that, while imperfect and with the intent to amend it, includes sufficient detail and description to withstand initial dispositive motions. Plaintiff realizes, even pro se, "Minimal requirements are not tantamount to nonexistent requirements. The threshold [for phrasing a claim] may be low, but it is real." Gooley v. Mobil Oil Corp., 851 F. 2d 513, 514 (1st Cir. 1988)). However, if met, then "to succeed, the moving party must show that there is an absence of evidence to support the non-moving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

## Background

Obviously, plaintiff has presented his complaint in a manner, which he believes has stated the causes that shall be proved by facts and supported by evidentiary materials produced under the normal course of discovery. Further, the complaint clearly describes the timing of the presentation of the complaint, and why it was brought forth as a Federal Claim under § 1983 and the Massachusetts Civil Rights Act, while meeting the requirements of M.G.L. c. 258, Section 4. (complaint para 7). Where the state has raised a question regarding notification of this claim to the correct administrator, or "executive

2

officer" as defined under the Tort Claims Act, plaintiff asserts that after reading the rules, he presented it where he believed it should go, and the communications indicate that his notification was received and the announcement was made (see plaintiff's affidavit 1).

Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983.

The defendants have moved to dismiss the action on several grounds including that the Commonwealth's sovereign immunity is assured by the Eleventh Amendment of the United States Constitution, and bars the suit and that the statutory provisions do not create private rights enforceable under section 1983. Third, they posit that the plaintiffs' complaint fails to state an actionable claim where his presentment of the case was not done correctly and or too late under statutory limitations.

Discussion

Sovereign Immunity

Generally, the Eleventh Amendment bars suits in federal courts against unconsenting states (including "official capacity" suits against state hierarchs). De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991) (collecting cases). This proscription is subject to a well recognized exception memorialized in Ex parte Young, 209 U.S. at 159-60. The exception allows federal courts, "notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, [to] enjoin state officials to conform future conduct to the requirements of federal law." Lane v. First Nat'l Bank, 871 F.2d 166, 172 n.5 (1st Cir. 1989) (quoting Ramirez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983)). Where plaintiff asserts in his complaint

3

that his constitutional rights were violated, immunity is not applicable where federal law has been violated, and as the results, continue to cause damage, this court may act, if requested, to prevent future harm by injunctive relief.

Qualified Immunity.

Another challenge to the § 1983 claim could be the claim of immunity under a qualified doctrine such as that of Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). Applying *Harlow*, one is "concerned not with the correctness of defendants' determination, on the one hand, nor their subjective state of mind, but [with] the 'objective reasonableness' of the [officials] conduct. . . . *Harlow* demands not prescience, but objective good faith." Hall v. Ochs, 817 F.2d at 924 (quoting De Abadia v. Izquierdo Mora, 792 F.2d 1187, 1193 (1st Cir. 1986)). Since reasonable officials are expected to know the law pertaining to their jobs, and plaintiff's complaint asserts the hospital official's conduct in the summer of 1997 violated clearly established constitutional rights, an analysis into the reasonableness of actions, or lack thereof is warranted.

As outlined in the string of related complaints, the defendants have used the system for something other than what it was intended. According to Restatement of Torts § 682, one who uses a legal process against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby.[1] As public employees and state officials, the defendants, perhaps might be entitled, at most, to qualified immunity.[2] However, even this would require that each of the defendants establish that their actions were carried out in the good-faith belief that were reasonable under existing circumstances of its lawfulness.[3] Contrary to that pretense, the defendants continued to detain plaintiff against the arguments he was presenting, and also permitted the false evaluation to go on past the initial period specified by M.G.L.A. 123 (para 8, First and Third Cause). Where there was no good-faith effort in those proceedings, no qualified immunity exists.

---

[1] One Am Jur 2d section 4 and 5, Abuse of Process; General requisites- improper, willful act
[2] Ibid.
[3] Ibid.

4

The right to be free from such detentions after the original tort involving an unreasonable seizure of a person was well established long before 1976. See, e.g., Sibron v. New York, 392 U.S. 40, 59-66, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968); Hall v. Ochs, 817 F.2d at 923. Despite plaintiff's continued protests to hospital officials regarding the reason for even being at the state hospital, what happened that summer of 1997 involved more an egregious "trespass into constitutionally well-marked terrain than an accidental inching across some vaguely-defined legal border." "The contours of the right" were, in this instance, "sufficiently clear that a reasonable official would understand that what he is doing violates [the] right." Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). No prudent official or physician could have failed to recognize plaintiff's protest each day, that the arrest and imprisonment were based on flimsy allegations that would strike a mortal blow at his civil rights. For those reasons, qualified immunity should not be a consideration to prematurely dismissing this action.

Massachusetts Tort Claims Act (MTCA)

In addition to the reasons discussed above, and because the MTCA abrogated tort law principles, the Act waives the doctrine of Sovereign Immunity, and permits an action to be brought directly against the 'public employer' as well as the individual employees, and allows the public employer to be held liable to the same extent as the private individual. M.G.L.A. 258 § 2. see generally Onofrio v. Department of Mental Health, 408 Mass. 605; 562 N.E.2d 1341; (1990). In addition, the state, as expressed in the related complaints (see related case 04-10271) had removed plaintiff from free society under the guise of a "15-b." Despite arguments presented by plaintiff, and where convincing evidence existed to exonerate him immediatly, it had used an affirmative exercise of it's power to give reason to an unwarranted incarceration, and therefore had an affirmative duty to protect while plaintiff was under it's order and "care." L. J. v. Massinga, 838 F.2d 118 (1988).

Looking towards Injunctive Relief

Understandably, the federal courts always act cautiously and are reluctant in issuing injunctions against the activities of state officials performing their official duties in good

faith. Hawks v. Hamill, 288 U.S. 52, 53 S. Ct. 240, 77 L.Ed. 610 (1933). However, this courts assistance is justified under the circumstances in this instant case as well as in the related cases, because of the treatment of plaintiff by each of the individually named "state" entities and individuals in and downstream of the trial court.

Although the charges against plaintiff were dismissed, the state trial court has failed to accurately make a proper record of precisely what happened there, and in this instant case, in the institution where plaintiff was illegally confined. In each instance, at each step of the process, ill-conceived and improper files remain that create a serious risk and a miscarriage of justice each day that passes; for these reasons alone, the case should not be dismissed where remediation in the form of injunctive relief is warranted. A modified complaint would not motion to have this court interfere with the state's workings per se, except where those workings have maliciously stomped all over the constitution and plaintiff's Civil Rights. Rather, where the underlying criminal proceeding has long since concluded, and the multiple civil actions brought forth arise out of the same nucleus of facts, plaintiff proposes modifying the complaint to seek only injunctive relief against the Hospital, while naming each of the individual actors. These modifications would put the complaint in 'sync' with applicable law and it is appropriate in this instance to protect the interests and Constitutional rights of plaintiff from continued further irreparable harm.

A host of other regions with similar laws pertaining to these issues support Courts of equity in protecting civil and personal rights when such rights are being denied. Smith v. State, 242 So. 2d 692 (Miss. 1970). In fact, the American Law Institute, Restatement (second) of Torts § 937, comment (a) (1977), has approved the modern doctrine that jurisdiction presides in appropriate cases where protection of personal rights is involved.

Further, since this U.S. Court already has a vested interest in, and jurisdiction over several related cases which arose out of the trial court proceeding, the intrusion of the state court and hospital, upon federal law and the civil rights of plaintiff results in a conflict of law, and plaintiff therefore submits this court may enjoin the concluded state

proceeding to preserve the federal right of due process. That is, the "hospital" and the public officers and employees may be restrained by injunction from proceeding in violation of the law to the injury of plaintiff's individual rights. Larson v. State, 166 Mont. 449, 534 P 2d 854 (1975). Courts have the right to review the decisions [and entries] reached in quasi-judicial proceedings for arbitrariness, illegality or capriciousness[4]  They also possess the inherent power to move for corrections of such abuses of authority by an injunction. Carter v. Jernigan, 227 N.W.2d 131 (Iowa 1975); and Goodwich v. Nolan, 343 Md. 130, 680 A.2d 1040 (1996). Unless these complaints are permitted to go forward, and unless relief is granted, plaintiff's rights will remain impaired. Where the remedy at law has proven inadequate so far, injunctive relief could be applied with practical success and without imposing an impossible burden on this court or bringing its processes into disrepute. Although there is no right to a federal injunction when it would impair or affront the sovereign powers or dignity of a state [actor], again, the federal courts may grant an injunction against state officials to prevent violations of federal law, where a constitutional violation has already occurred, and the concerns surrounding such a violation is ongoing and both real and immediate.[5] Parker v. Turner, 626 F. 2d 1 (6th Cir. 1980).

For the foregoing reasons, the Motion should not be allowed, and the complaint should be allowed to proceed as a matter of due process in this civil action.

Respectfully submitted,

June 7, 2005
    Date

---

[4] Twenty-seven Am Jur 2d, sections 88 and 97, Equity
[5] Forty-two Am Jur 2d, section 168, Injunctions, Federalism Issues

7

## CERTIFICATE OF SERVICE

I, George Logue, plaintiff, hereby certify that on the 7th day of June 2005, I caused a true copy of the documents above to be served on the defense as listed below, by serving one copy of same, by first class mail postage paid.

Sarah M. Joss
Assistant Attorney General
One Ashburton Place
Boston, MA 02108

8